UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | ) | |
|---|---|---|
| DANIEL L. YOST, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:12-cv-1405 |
| | ) | |
| v. | ) | Honorable Phillip J. Green |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **OPINION** |
| Defendant. | ) | |
| | ) | |

   This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security terminating plaintiff's disability insurance (DIB) benefits. In 2004, the Social Security Administration determined that plaintiff was disabled as of September 27, 2002. (Page ID 125-30). On May 8, 2009, it determined that plaintiff was no longer disabled as of May 1, 2009. (Page ID 138-41). Plaintiff requested reconsideration of the administrative decision. On March 30, 2011, a disability hearing officer upheld the decision terminating plaintiff's benefits. (Page ID 145-58). Plaintiff requested a hearing before an administrative law judge (ALJ). On April 11, 2012, plaintiff received a hearing before an ALJ, at which he was represented by counsel. (Page ID 65-123). On June 13, 2012, the ALJ issued her decision finding that plaintiff was not disabled. (Page ID 37-48). On November 8, 2012, the Appeals Council denied review (Page ID 30-32), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a complaint seeking judicial review of the Commissioner's decision. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties voluntarily consented to have a United States magistrate judge conduct all further proceedings in this case, including entry of final judgment. (docket # 10). Plaintiff asks the Court to overturn the Commissioner's decision based on arguments that the ALJ "erroneously failed to give appropriate weight to the opinions of [] treating sources and misapplied the law." (Plf. Brief at 3, docket # 11, Page ID 703). The court finds that plaintiff's arguments do not provide any basis for disturbing the Commissioner's decision. A judgment will be entered affirming the Commissioner's decision.

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012);

*Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Sequential Analysis

ALJs employ an eight-step sequential analysis in disability review cases. *See* 20 C.F.R. § 404.1594(f). There is no presumption of continuing disability. *See Kennedy v. Astrue*, 247 F. App'x 761, 764 (6th Cir. 2007) (citing *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286-87 (6th Cir. 1994)). In step one, the ALJ examines

whether the individual is engaging in substantial gainful activity. If the answer is yes, the individual's disability has ended. Step two is an examination of whether the individual had an impairment or combination of impairments which meets or equals the severity of a listed impairment. If answered in the affirmative, disability continues. Step three is an inquiry as to whether there had been medical improvement. Step four is an examination whether the medical improvement is related to the individual's ability to perform work. Step five is an analysis conducted if there has been no medical improvement or the medical improvement is not related to the individual's ability to perform work. Step six is a determination whether the individual's current impairments are severe. If there is no severe impairment, the individual is not disabled. Step seven is an assessment of the claimant's "ability to do substantial gainful activity" in accordance with 20 C.F.R. § 404.1560. That is, the ALJ determines the individual's residual functional capacity based on all his current impairments and considers whether he can perform past relevant work. If he can perform such work, he is not disabled. Step eight is an administrative finding whether the individual can perform other work in light of his age, education, work experience and RFC. If he is capable of performing other work, he is not disabled. 20 C.F.R. § 404.1594(f); *see Hagans v. Commissioner*, 694 F.3d 287, 307-08 (3d Cir. 2012); *Delph v. Astrue*, 538 F.3d 940, 945-46 (8th Cir. 2008).

## Discussion

The ALJ found that the administrative decision dated February 12, 2004, was the most recent favorable decision finding that plaintiff was disabled. It was "the 'comparison point decision' or CPD." (Op. at 3, Page ID 39). At the time of the CPD, plaintiff had severe impairments. (*Id.*). Plaintiff had not engaged in substantial gainful activity on or after May 1, 2009, the date his disability ended. (*Id.*). The ALJ found that the medical evidence established that, as of May 1, 2009, plaintiff had the following medically determinable severe impairments:

> [T]ype I diabetes mellitus, with retinopathy and no vision and a dense cataract in the right eye, and renal insufficiency secondary to neuropathy, status-post pancreas and kidney transplant, cardiomyopathy with a history of coronary artery bypass surgery, and orthostatic hypotension intermittently symptomatic, but no longer with chronic heart failure; anemia; mild thoracic dextroscoliosis, status post fracture of clavicle and right scapula, intercostal neuritis; and depression and anxiety.

(*Id.*). The ALJ found that since May 1, 2009, plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (*Id.*). She found that "[m]edical improvement [had] occurred as of May 1, 2009." (*Id.* at 4, Page ID 40). The medical improvement was related to plaintiff's ability to work because it resulted in an increase in his residual functional capacity. (*Id.*). Plaintiff continued to have severe impairments on and after May 1, 2009. (*Id.* at 5, Page ID 41).

The ALJ found that on and after May 1, 2009, plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> As of May 1, 2009, the impairments at the time of the CPD, as well as the additional impairments, had decreased in medical severity to the point where the claimant had the residual functional capacity to perform light work consisting of lifting and or carrying 20 pounds occasionally and 10 pounds frequently; standing and/or walking up to two hours, and sitting up to six hours, each per eight-hour workday with normal breaks; no climbing of ladders, ropes or scaffolds, and less than frequent climbing of ramps or stairs, stooping, balancing, crouching, crawling or kneeling; no overhead reaching bilaterally; no right side to left side assembly line work or commercial driving, secondary to limited depth perception and field of vision; with the ability to work with large and small objects and to avoid ordinary hazards in the workplace; and with the ability to understand, remember and perform simple tasks, make simple work related decisions and to respond appropriately to co-workers and supervisors, with less than frequent contact with the public; and with the ability to adapt to less than frequent changes in work expectations and work environment.

(*Id.*).  The ALJ found that plaintiff's testimony regarding his subjective limitations was not fully credible.  (*Id.* at 5-11, Page ID 41-47).  She found that on and after May 1, 2009, plaintiff was could not perform his past relevant work.  (*Id.* at 11, Page ID 47). The ALJ then turned to the testimony of a vocational expert (VE).  In response to a hypothetical question regarding a person of plaintiff's age, and with his RFC, education, and work experience, the VE testified that there were approximately 8,000 jobs in Michigan that the hypothetical person would be capable of performing.  (Page ID 117-18).  The ALJ found that this constituted a significant number of jobs.  Using Rule 202.21 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff's "disability ended as of May 1, 2009."  (Op. at 11-12, Page ID 47-48).

1.

Plaintiff's arguments regarding the opinions of Gregory Downer, M.D., and Psychologist Paul Delmar are based on evidence that plaintiff never presented to the ALJ. (Plf. Brief at 8, 11-12, Page ID 708, 711-12). This is improper. It is well-established law within the Sixth Circuit that the ALJ's decision is the final decision subject to review by this court in cases where the Appeals Council denies review. This court must base its review of the ALJ's decision on the administrative record presented to the ALJ. The Sixth Circuit has repeatedly held that where, as here, the Appeals Council denies review and the ALJ's decision becomes the Commissioner's decision, the court's review is limited to the evidence presented to the ALJ. *See Jones v. Commissioner*, 336 F.3d at 478; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Cline v. Commissioner*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *see also Osburn v. Apfel*, No. 98-1784, 1999 WL 503528, at * 4 (6th Cir. July 9, 1999) ("Since we may only review the evidence that was available to the ALJ to determine whether substantial evidence supported [his] decision, we cannot consider evidence newly submitted on appeal after a hearing before the ALJ."). The court is not authorized to consider plaintiff's proposed additions to the record in determining whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner correctly applied the law. *See Cline*, 96 F.3d at 148.

Plaintiff asks the court to overturn the Commissioner's decision. He has not requested that this matter be remanded. (Plf. Brief at 12, Page ID 712). "A district court's authority to remand a case for further administrative proceedings is found in

42 U.S.C. § 405(g)." *Hollon v. Commissioner*, 447 F.3d 477, 482-83 (6th Cir. 2006). The statute permits only two types of remand: a sentence four (post-judgment) remand made in connection with a judgment affirming, modifying, or reversing the Commissioner's decision; and a sentence six (pre-judgment) remand where the court makes no substantive ruling as to the correctness of the Commissioner's decision. *Hollon*, 447 F.3d at 486 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991)); *see Allen v. Commissioner*, 561 F.3d 646, 653-54 (6th Cir. 2009). The court cannot consider evidence that was not submitted to the ALJ in the sentence four context. It only can consider such evidence in determining whether a sentence-six remand is appropriate. *See Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007); *Foster v. Halter*, 279 F.3d at 357.

Plaintiff has the burden under sentence six of 42 U.S.C. § 405(g) of demonstrating that the evidence he now presents in support of a remand is "new" and "material," and that there is "good cause" for the failure to present this evidence in the prior proceeding. *See Hollon*, 447 F.3d at 483; *see also Ferguson v. Commissioner*, 628 F.3d 269, 276 (6th Cir. 2010). Courts "are not free to dispense with these statutory requirements." *Hollon*, 447 F.3d at 486. Plaintiff has ignored his burden. There is no argument supporting a remand under sentence six. Issues raised in a perfunctory manner are deemed waived. *See Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012); *see also Moore v. Commissioner*, 573 F. App'x 540, 543 (6th Cir. 2014). Plaintiff "develops no argument to support a remand, and thus the request is waived." *Curler v. Commissioner*, 561 F. App'x 464, 475 (6th Cir. 2014).

Even assuming that this issue had not been waived, plaintiff has not addressed, much less satisfied, his statutory burden for remanding this matter to the Commissioner for consideration of new evidence under sentence six of 42 U.S.C. § 405(g). The proffered evidence is new because it was generated after the ALJ's decision. *See Ferguson*, 628 F.3d at 276; *Hollon*, 447 F.3d at 483-84.

"Good cause" is not established solely because the new evidence was not generated until after the ALJ's decision. *See Courter v. Commissioner*, 479 F. App'x at 725. The Sixth Circuit has taken a "harder line." *Oliver v. Secretary of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986). The moving party must explain why the evidence was not obtained earlier and submitted to the ALJ before the ALJ's decision. *See Ferguson*, 628 F.3d at 276. Plaintiff has not addressed, much less carried, his burden of demonstrating good cause.

Finally, in order to establish materiality, plaintiff must show that the introduction of the evidence would have reasonably persuaded the Commissioner to reach a different conclusion. *See Ferguson*, 628 F.3d at 276; *Foster v. Halter*, 279 F.3d at 357. Plaintiff has not addressed or carried his burden. On August 6, 2012, almost two months after the ALJ entered her decision, Dr. Downer wrote a letter stating that plaintiff might not be able to obtain his transplant medications "due to lack of insurance coverage." (Page ID 694). On August 9, 2012, Dr. Taylor wrote a letter asking the Social Security Administration to reconsider its decision. (Page ID 692). These letters would not have persuaded the ALJ to reach a different conclusion on the

question of whether plaintiff was disabled during the period at issue, May 1, 2009, through June 13, 2012.

Plaintiff has not demonstrated that remand pursuant to sentence six of 42 U.S.C. § 405(g) is warranted. His arguments must be evaluated on the record presented to the ALJ.

**2.**

Plaintiff argues that the ALJ "failed to give appropriate weight to the opinions of Gregory Downer, a treating nephrologist,[1] and Paul Delmar, a treating psychologist. (Plf. Brief at 3, Page ID 703). The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). Likewise, "no special significance" is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner. 20

---

[1] Nephrologists treat kidney diseases. *See Lal v. U.S. Life Ins Co.*, 345 F. App'x 144, 145 (6th Cir. 2009); *Mathis v. Sudhir*, No. 1:13-cv-187, 2014 WL 905823, at * 3 n.1 (W.D. Mich. Mar. 5, 2014).

C.F.R. §§ 404.1527(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see Gayheart v. Commissioner*, 710 F.3d 365, 376 (6th Cir. 2013) (A treating physician's medical opinion is entitled to controlling weight where "two conditions are met: (1) the opinion 'is well supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" (citing 20 C.F.R. § 404.1527(c)(2)). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). An opinion that is based on the claimant's reporting of his symptoms is not entitled to controlling weight. *See Young v. Secretary of Health*

*& Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight, it should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. § 404.1527(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

Plaintiff's argument with regard to Dr. Downer (Plf. Brief at 11-12, Page ID 711-12) is based on evidence that was never presented to the ALJ, and which cannot be considered by this court for the reasons listed in section 1. This argument does not provide a basis for disturbing the Commissioner's decision.

A brief discussion of the record is necessary to place plaintiff's arguments with regard to Psychologist Delmar into context. The vast majority of the medical evidence found in the record predates the period at issue which began on May 1, 2009, and was generated during a period when the Administration considered plaintiff disabled. (Page ID 366-512, 528-530, 580-85). Plaintiff has no history of hospitalization of treatment for any mental impairment.

On May 4, 2008, he received medical treatment for a broken right clavicle and scapula. He had been "dirt biking and [] fell off his dirt bike to the ground striking his right shoulder." (Page ID 392-95). On November 24, 2008, plaintiff informed his primary care provider, Paul D. Taylor, M.D., that a day earlier he had pinched his right hand between his boat and boat trailer. Dr. Taylor found no evidence of fracture and provided plaintiff with pain medication. (Page ID 432).

On December 7, 2008, plaintiff reported to Charles Zickus, M.D., that he had developed a "funny feeling" in his chest: "This is a 37-year-old male who was goose hunting as he does daily. Yesterday he walked through the deep snow. After four hours out in the snow, dragging a 60 pound sled, he developed a 'funny feeling in his chest.'" (Page ID 407). Dr. Zickus noted that plaintiff had coronary bypass surgery in 2003 and a kidney and pancreas transplant in 2005. (Page ID 407). Plaintiff's heart was mildly enlarged and his EKG showed regular sinus rhythm. There was no evidence of valvular heart disease. (Page ID 407-09). Plaintiff's exercise stress test results were "unremarkable" with "no evidence for stress-induced ischemia and a small fixed apical defect." (Page ID 421-23).

On January 13, 2009, plaintiff informed Dr. Taylor that he was "doing well," but continued to have some right-sided shoulder pain after his motorcycle accident. Dr. Taylor's progress notes indicate that plaintiff had no other complaints: "He has had no chest discomfort, shortness of breath, orthopnea, PND, lower extremity edema, palpitations, pre-syncope or syncope. No hypoglycemic episodes. His blood pressure has been stable. No other particular complaints today." (Page ID 429).

On February 19, 2009, plaintiff's doctors noted that he was feeling "amazingly well." His energy level was "excellent." (Page ID 528). On April 1, 2009, Dr. Taylor indicated that plaintiff was "doing well," his pain was under good control, he had no chest discomfort and no side-effects from medication. (Page ID 500). On April 22, 2009, plaintiff complained of stress. Dr. Taylor found that plaintiff was anxious, but had no homicidal or suicidal ideation. Dr. Taylor continued a Xanax prescription and provided counseling. Plaintiff refused Dr. Taylor's offer of formal counseling. Taylor stated that he did not believe that plaintiff had any ongoing mood issues. (Page ID 499).

X-rays of plaintiff's right shoulder on August 11, 2009, showed no acute traumatic or intrinsic osseous abnormality. The shoulder was stable in appearance when compared to the x-ray taken on March 3, 2003. (Page ID 579).

In April 2010, a physical therapist's attempted to conduct a physical work performance evaluation. Plaintiff displayed self-limiting behavior and stated that he did not feel well, but refused to go to the hospital. (Page ID 556-60).

On February 11. 2011, plaintiff's chest x-rays showed "mild" cardiomegaly. (Page ID 578).

On July 19, 2011, plaintiff appeared at the office of his family physician, Dr. Taylor, for a follow-up visit with regard to his chronic pain syndrome and depression. (Page ID 589). Plaintiff complained that the Paxil prescribed by his nephrologist made him fatigued. He asked Dr. Taylor to provide him with alternative medication. Dr Taylor noted that plaintiff was again claiming that his medication had been stolen:

> He claims that someone broke into his home yesterday, stealing all of his medications, including his Percocet, which he filled just three or four days prior. This is the second time he has said that someone has stolen his pain medications. He recalls that when it happened the first time, we did give him a replacement prescription for his pain medicine, but we told him it would not happen again. He's using on average four Percocet 5/325 tablets a day. His working diagnosis for his pain has been post-thoracotomy syndrome, however, he also has intermittent shoulder pain and low back pain. He has no other particular complaints. He's tolerating medicines well, without side effects.

(*Id.*). Dr. Taylor offered a diagnosis of uncontrolled anxiety/depression and gave plaintiff a prescription for Celexa. Dr. Taylor did not approve a prescription to replace the pain medications that were allegedly stolen. He gave plaintiff 30 Xanax tablets to ease plaintiff's potential withdrawal symptoms. (*Id.*).

August 15, 2011, Joseph VandenBosch, M.D., performed an intake assessment at Michigan Pain Consultants (MPC). (Page ID 571-72). Dr. Taylor had referred plaintiff for an evaluation and consideration of injection therapy. Plaintiff conceded that within the past month he had used pain medication that had not been prescribed for him. (Page ID 571). On August 29, 2011, plaintiff returned to MPC. He advised

Dr. VandenBosch that he had discussed the matter with his cardiologist and he wanted to proceed with intercostal injection therapy. (Page ID 566).

On September 19, 2011, plaintiff reported that his pain had improved significantly after the intercostal nerve blocks on August 29, 2011. (Page ID 564). X-rays taken of plaintiff's right shoulder on October 4, 2011, showed no fracture, subluxation or dislocation. Bone mineralization was normal. There was no acute bony abnormality or significant arthritic change. (Page ID 586). The x-rays of plaintiff's lumbar spine returned normal results. (Page ID 587).

On October 13, 2011, plaintiff reported to Dr. Joseph VandenBosch "some significant improvement of about 80% in his anterior chest wall pain for close to two months following his bilateral T6 and T7 intercostal nerve block treatments." (Page ID 680). On November 21, 2011, Dr. VandenBosch noted that nerve block injections had provided plaintiff with sufficient pain relief that he was capable of participating in duck and deer hunting. (Page ID 674). On November 8, 2011, plaintiff's chest x-rays revealed no acute process. (Page ID 658). On November 21, 2011, VandenBosch noted plaintiff's continued pain relief with intercostal injections. (Page ID 673).

It was against this backdrop that the ALJ considered the treatment provided by Psychologist Delmar and the opinions that he offered. Dr. Delmar had no treatment relationship with plaintiff during most of the period at issue. Psychologist Delmar conducted an intake evaluation on August 31, 2011, and he saw plaintiff on a total of six occasions (Op. at 9-10, Page ID 45-46; *see* Page ID 602-17, 649).

On September 28, 2011, Psychologist Delmar completed a "Mental Residual Functional Capacity Questionnaire" for plaintiff's attorney. (Page ID 597-601). Delmar indicated that he had seen plaintiff on three occasions, each visit from 45 to 60 minutes in duration. (Page ID 597). He offered a diagnosis of major depression, severe, and gave plaintiff a GAF score of 45. (*Id.*). Among other things, Delmar stated that he would anticipate that plaintiff would be absent from work about four days per month and that plaintiff has been so restricted "since transplant [surgery in] 2005." (Page ID 601). On April 3, 2012, plaintiff's attorney elicited a sworn statement from Psychologist Delmar during which he reiterated the opinions he expressed in September 2011 and added to them. (Page ID 620-47). On March 20, 2012, Delmar signed a one-sentence letter stating: "I have reviewed the Mental RFC completed on 9/28/11 and believe it accurately reflects Mr. Yost's current capabilities and limitations." (Page ID 648). The ALJ addressed this evidence at length:

> As for the opinion evidence, Dr. Delmar had provided a functional capacity assessment on September 28, 2011. He opined the claimant lacked the capacity to meet competitive standards in relation to maintaining regular attendance and being punctual, completing a normal workday or workweek without psychological interruptions, to perform at a consistent pace without an unreasonable number and length of rest breaks, or deal with work stresses. He said he lacked the capacity to deal with the stress of skilled or semi-skilled, and he would likely miss four or more days of work per month. (Ex B34F)[.] On March 20, 2012 Dr. Delmar indicated his opinions of September 28, 2011 remained in effect (Ex B36F/30).
>
> Dr. Delmar also gave a sworn deposition to the claimant's attorney on April 3, 2012 (Ex B36F). He elaborated on his degree of concern for the claimant's well-being, pointing out that the activity he engages in, such as hunting, is done despite his limitations as a means of controlling some part of his life. He is reluctant to fully follow medical advice as he thinks

-17-

> he knows better and keeps his own counsel. Dr. Delmar added that he feels the claimant is very fatigued due to the amount of energy consumed by his anxiety.
>
> I can give some weight to Dr. Delmar's opinion, agreeing that the claimant is limited to unskilled work with social limitations. I must discount his overall opinion as he indicates that he believes the claimant has more cardiac limitations than shown by the medical evidence, and he is concerned about ongoing diabetes after kidney transplant, apparently unaware of the pancreas transplant that has essentially ended the diabetes. The degree of the claimant's distress about his physical condition is overstated. His assertions that no one can figure out the cause of his chest pain, which Dr. Delmar apparently fears is cardiac in origin, ignores the diagnosis of intercostal nerve pain and the considerable relief provided by injections. Apparently, the claimant did not share that information with Dr. Delmar. It also appears he failed to share the degree of his outdoor and hunting activities with Dr. Delmar.

(Op. at 0, Page ID 46). The court finds no violation of the treating physician rule.

Plaintiff makes a passing assertion that the ALJ failed in his duty under SSR 96–5p to recontact Psychologist Delmar. (Plf. Brief at 10). This argument is undeveloped and meritless. In *Ferguson v. Commissioner*, 628 F.3d 269 (6th Cir. 2010), the Sixth Circuit held that there were "two conditions that must both be met to trigger SSR 96–5p's duty to recontact: 'the evidence does not support a treating source's opinion ... and the adjudicator cannot ascertain the basis of the opinion from the record.' " *Id.* at 273 (quoting 1996 WL 374183, at * 6). An unsupported opinion alone does not trigger the duty to recontact. *Ferguson*, 628 F.3d at 273. SSR 96–5p's duty is not triggered where, as here, the ALJ did not reject the psychologist's opinions because they were unclear to him, but instead he rejected the opinions because they were based on plaintiff's subjective complaints, were not supported by objective medical evidence, were inconsistent with plaintiff's extensive outdoor recreation activities, and

were far more restrictive than the opinions of the plaintiff's treating heart and pain management specialists.  *Ferguson*, 628 F.3d at 273.  " '[A]n ALJ is required to re-contact a treating physician only when the information received is inadequate to reach a determination on claimant's disability status, not where, as here, the ALJ rejects the limitations recommended by that physician.' "  *Ferguson*, 628 F.3d at 274 (quoting *Poe v. Commissioner*, 342 F. App'x 149, 156 n. 3 (6th Cir.2009)).  Where the duty is not triggered, it is not violated.  *Ferguson*, 628 F.3d at 274.

## Conclusion

For the reasons set forth herein, a judgment will be entered affirming the Commissioner's decision.

Dated:   June 19, 2015                         /s/  Phillip J. Green                                  
                                                                United States Magistrate Judge